The **O.N. EQUITY SALES COMPANY**, Plaintiff,

v.

**Harold E. PALS, Individually and as Trustee of the Harold E. Pals Revocable Living Trust, and The Claire E. Pals Revocable Living Trust, through Harold E. Pals, Trustee, Defendants.**

No. C 07–4049–MWB.

United States District Court,
N.D. Iowa,
Western Division.

Sept. 6, 2007.

Marion H. Little, Michael R. Reed, Zeiger, Tigges & Little LLP, Columbus, OH and Patrick L. Sealey, Sioux City, IA, for Plaintiff.

Joel A. Goodman, Goodman & Nekvasil, PA, Clearwater, FL, and Gail E. Boliver, Boliver Law Firm, Marshalltown, IA, for Defendants.

**MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND DEFENDANTS' MOTION TO COMPEL ARBITRATION**

MARK W. BENNETT, District Judge.

764

## TABLE OF CONTENTS

I. INTRODUCTION ................................................764
 A. Nature Of The Action And Pending Motions ..........................764
 B. Factual Background..........................................765

II. LEGAL ANALYSIS ..............................................766
 A. Standards For A Preliminary Injunction ...........................766
 B. Standards To Compel Arbitration ...............................767
 1. Valid arbitration agreement .............................768
 2. Whether the dispute falls within the terms of the agreement ...........768
 a. "Customer" condition ..............................768
 b. "Arising in connection with the business relationship" condi-
 tion ......................................................769
 3. Summary ...........................................770
 C. Impact Of Arbitrability Determination .............................770

III. CONCLUSION ................................................771

### I. INTRODUCTION

#### A. Nature Of The Action And Pending Motions

This is an action for declaratory and injunctive relief by plaintiff O.N. Equity Sales Company (ONESCO) against defendant Harold E. Pals, individually and as the trustee of two revocable living trusts, the Harold E. Pals Revocable Living Trust, and the Claire E. Pals Revocable Living Trust (collectively Pals). In this action, ONESCO seeks an order enjoining Pals, both preliminarily and permanently, from taking any further action with respect to an arbitration action, Case No. 07–00937, filed with the National Association of Securities Dealers (NASD) on or about March 16, 2007, and amended on or about April 20 and April 25, 2007.[1]

This matter comes before the court pursuant to ONESCO's August 16, 2007, Motion For Preliminary Injunction (docket no. 8), which seeks to enjoin Pals, preliminarily, from taking any further action with respect to the NASD arbitration action. This matter also comes before the court pursuant to Pals's August 24, 2007, Motion To Compel Arbitration (docket no. 20), which is a companion to Pals's August 24, 2007, Brief In Opposition To Plaintiff's Motion For Preliminary Injunction (docket no. 22).

Also pending before the court are ONESCO's August 16, 2007, Motion To Consolidate Preliminary Injunction Hearing With Trial On The Merits (docket no. 10); ONESCO's August 24, 2007, Motion For Order Authorizing The Parties To Engage In Immediate Discovery On The Issue Of Arbitrability (docket no. 17); and Pals's August 24, 2007, Motion For Protective Order (docket no. 21). The court finds that these motions will necessarily be mooted by the court's disposition of ON-

---

1. This action is apparently one of eighteen that ONESCO has brought addressing essentially the same arbitrability question in different federal courts, each apparently involving the same arbitration action, but different groups of investors. The fact that other actions are pending in other jurisdictions may explain the lack of reliance on Eighth Circuit law in either party's various briefs, but it does not excuse the failure to acknowledge *control-* *ling* precedent on such matters as the standards for preliminary injunctions or motions to compel arbitration or other substantive issues in the case on which the Eighth Circuit Court of Appeals has spoken. "Canned briefs," while efficient, are not necessarily the most persuasive way to present a case to the court, particularly when they fail to address controlling precedent from the pertinent regional circuit.

ESCO's Motion For Preliminary Injunction and Pals's Motion To Compel Arbitration. Moreover, ONESCO has not shown that immediate discovery is required to determine the issue of arbitrability. Finally, while a motion for preliminary injunction ordinarily requires a hearing, *see* FED.R.CIV.P. 65, a motion to compel arbitration does not necessarily require a hearing. Because of the well-developed record provided by the parties concerning the pending motions and the court's disposition herein of the Motion To Compel Arbitration, the court finds it unnecessary to hold a hearing on any of the pending motions.

### B. Factual Background

Plaintiff ONESCO is a full-service securities broker-dealer registered in all 50 states. Non-party Gary Lancaster was a registered representative with ONESCO, as an independent contractor, from March 23, 2004, to January 3, 2005. Prior to and during his association with ONESCO, Lancaster was the trustee of a private placement offered by Lancorp Financial Fund Business Trust (the Lancorp Fund), which was described in offer documents as "an unregistered, closed-end non-diversified management investment company." ONESCO contends, however, that Lancaster did not disclose to ONESCO his prior or continuing involvement with the Lancorp Fund.

The court finds that defendant Harold E. Pals executed a subscription agreement, purportedly as Trustee of the Harold E. Pals Revocable Living Trust, on June 23, 2003, to subscribe to the private placement offering by the Lancorp Fund and executed a similar subscription agreement, purportedly as Trustee of the Claire H. Pals Revocable Living Trust, on August 14, 2003, approximately nine months and seven months, respectively, before Lancaster became associated with ONESCO in March 2004. ONESCO acknowledges that Pals did engage in some activity with the Lancorp Fund investment after execution of the subscription agreements and after Lancaster became associated with ONESCO, including payments into the Lancorp Fund of $75,000 and $37,000 on April 28 and May 17, 2004, respectively. ONESCO contends that, despite this later activity, Pals was not a customer of ONESCO and that ONESCO was unaware of Lancaster's involvement with the Lancorp Fund.

Pals contends, and the court finds, that Lancaster did not, in fact, invest his or other investors' funds initially, but held those funds in escrow, because the Lancorp Trust had not yet "gotten off the ground." The court finds that, according to the private placement memorandum, the investors' initial cash payments were held in escrow until the closing date. The court finds, further, that the investment was subject to withdrawal, cancellation, or modification by Lancorp without notice until the closing date. Indeed, the court finds that, pursuant to the private placement memorandum, Lancorp could decide, in its sole discretion, to terminate the offering at any time before the maximum number of units had been sold. The private placement memorandum also stated that, if any material changes in the Lancorp offering occurred before closing, Lancorp would amend or supplement the private placement memorandum. Pals contends that material changes did occur and that Lancorp did amend the private placement offering. The court finds that Lancorp had initially included an option to purchase insurance to insure investors against failure by Lancorp to return funds upon redemption of shares, but insurance industry changes in 2003 and 2004 prevented Lancorp from obtaining insurance. Therefore, in April 2004, Lancaster notified all Lancorp investors that a material change in the investment had occurred, because Lancorp had replaced the insur-

ance with a new bank or broker/dealer obligation that would guarantee their investment. Because of the change, Lancorp required all investors either to confirm their subscription participation and acknowledge the changes in the offering, or to request withdrawal of their subscriptions. Pals confirmed his participation and acknowledged the changes in the offering, and eventually invested about $1.1 million in the Lancorp Fund. Pals contends that no subscription became final until May 14, 2004, after the changes to the insurance component of the investment, when subscriptions for all of the units of the fund were obtained. In short, Pals contends that no investment became final until after Lancaster became associated with ONESCO.

ONESCO alleges, and Pals apparently does not dispute, that Lancaster invested significant funds from the Lancorp Fund in Megafund, which turned out to be a Texas-based Ponzi scheme. Because of its bad investment in Megafund, the Lancorp Fund also failed, and eventually went into receivership. Pals contends that, had ONESCO properly supervised Lancaster, ONESCO could have stopped the Lancorp offering and could have directed Lancaster to return all funds to his customers before any losses were sustained.

On or about March 16, 2007, Pals and other investors in the Lancorp Fund private placement offering filed an arbitration action with the National Association of Securities Dealers, Inc., Case No. 07–00937, and amended their statement of claims on or about April 20 and April 25, 2007. ONESCO contends that Pals's claims in the arbitration action are premised on alleged misrepresentations that Lancaster made in the private placement memorandum to induce investors to invest in the Lancorp Fund's private placement offering, although ONESCO admits that Pals and other investors also assert that ONESCO

negligently supervised Lancaster. ONESCO contends that the critical actions that induced Pals to invest in the Lancorp Fund and, thus, the critical actions on which Pals's arbitration action is based occurred before Lancaster was even associated with ONESCO. Pals, on the other hand, contends that his arbitration claims are also based, in significant part, on conduct of Lancaster that occurred after Lancaster became associated with ONESCO and on ONESCO's own conduct in failing to supervise Lancaster after Lancaster became associated with ONESCO.

## II. LEGAL ANALYSIS

As mentioned above, ONESCO has filed the present action for declaratory judgment that the dispute between Pals and ONESCO is not arbitrable and to enjoin Pals's arbitration action against ONESCO. This matter is now before the court on ONESCO's motion to preliminarily enjoin Pals's arbitration action and on Pals's responsive motion to compel arbitration.

### A. Standards For A Preliminary Injunction

■ As this court has explained in past cases, it is well-settled in this circuit that applications for preliminary injunctions are generally measured against the factors set forth in the seminal decision in *Dataphase Systems, Inc. v. C L Systems, Inc.,* 640 F.2d 109, 113 (8th Cir.1981) (*en banc*). *See Interbake Foods, L.L.C. v. Tomasiello,* 461 F.Supp.2d 943, 954–55 (N.D.Iowa 2006); *Doctor John's, Inc. v. City of Sioux City, Iowa,* 305 F.Supp.2d 1022, 1033–34 (N.D.Iowa 2004); *Branstad v. Glickman,* 118 F.Supp.2d 925, 937 (N.D.Iowa 2000); *Uncle B's Bakery, Inc. v. O'Rourke,* 920 F.Supp. 1405, 1411 (N.D.Iowa 1996); *accord Straights and Gays for Equality v. Osseo Area Schools–District,* 471 F.3d 908, 911 (8th Cir.2006) (same factors); *Lankford v. Sherman,* 451 F.3d 496, 503 (8th

Cir.2006) (same factors). These so-called "*Dataphase* factors" include the following: (1) the movant's probability or likelihood of success on the merits, (2) the threat of irreparable harm to the movant absent the injunction, (3) the balance between the harm and the injury that the injunction's issuance would inflict on other interested parties, and (4) the public interest. *Dataphase*, 640 F.2d at 114; *accord Interbake Foods, L.L.C.*, 461 F.Supp.2d at 955; *Doctor John's, Inc.*, 305 F.Supp.2d at 1033; *Branstad*, 118 F.Supp.2d at 937 (quoting similar factors from *Entergy, Ark., Inc. v. Nebraska*, 210 F.3d 887, 898 (8th Cir. 2000)); FED.R.CIV.P. 65(b)(1).

■ When applying the *Dataphase* factors, the burden is on the movant to establish that a preliminary injunction is appropriate. *Lankford*, 451 F.3d at 503; *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir.1994); *Modern Computer Sys., Inc., v. Modern Banking Sys., Inc.*, 871 F.2d 734, 737 (8th Cir.1989) (*en banc* ). " 'No single [*Dataphase* ] factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction.' " *Baker Elec. Co-op.*, 28 F.3d at 1472 (quoting *Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.*, 815 F.2d 500, 503 (8th Cir.1987) (citing *Dataphase* )); *accord Lankford*, 451 F.3d at 503 ("No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue.") (citing *Baker Elec. Co-op.*); *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir.1999) ("These factors are not a rigid formula."). " 'A district court has broad discretion when ruling on requests for preliminary injunctions, and [the appellate court] will reverse only for clearly erroneous factual determinations, an error of law, or an abuse of that discretion.' " *Entergy, Ark., Inc.*, 210 F.3d at 898 (quoting *United Indus. Corp*, 140 F.3d at 1179); *accord Lankford*, 451 F.3d at 503.

The court abuses its discretion "where the district court rests its conclusion on clearly erroneous factual findings or erroneous legal conclusions." *Lankford*, 451 F.3d at 503–04.

■ The first "*Dataphase* factor" that courts must consider when ruling on an application for a preliminary injunction is the likelihood or probability of success on the merits. *Dataphase*, 640 F.2d at 114. Likelihood of success on the merits requires that the movant find support for its position in governing law. *See, e.g., Baker Elec. Cooperative*, 28 F.3d at 1473–74 (Indian tribe's sovereignty to regulate electrical services); *ILQ Inv., Inc. v. City of Rochester*, 25 F.3d 1413, 1416 (8th Cir. 1994) (first amendment and prior restraint of expression); *City of Timber Lake v. Cheyenne River Sioux Tribe*, 10 F.3d 554, 556–58 (8th Cir.1993) (Indian tribe's regulatory authority and authority of states to regulate activities on tribal lands); *Aziz v. Moore*, 8 F.3d 13, 15 (8th Cir.1993) (denial of injunctive relief was proper because federal courts "must abstain from imposing injunctions on prison officials [in an action under 42 U.S.C. § 1983 action] 'in the absence of a concrete showing of a valid claim and constitutionally mandated directives for relief,' " quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir.1982)). In this case, if the court determines that Pals's Motion To Compel Arbitration should be granted, it would follow that ONESCO cannot establish the necessary likelihood of success on its claim that the parties' dispute is not arbitrable to warrant preliminary injunctive relief enjoining Pals's arbitration action. Therefore, the court turns, next, to the standards for disposition of a motion to compel arbitration.

### B. Standards To Compel Arbitration

■ "[A]rbitration is a matter of contract and a party cannot be required to

submit to arbitration any dispute which he has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), with internal marks omitted). The Eighth Circuit Court of Appeals has explained, "In addressing a motion to compel arbitration then, courts generally 'ask only (1) whether there is a valid arbitration agreement and (2) whether the particular dispute falls within the terms of that agreement.'" *EEOC v. Woodmen of World Life Ins. Soc.,* 479 F.3d 561, 566 (8th Cir.2007) (quoting *Faber v. Menard, Inc.,* 367 F.3d 1048, 1052 (8th Cir.2004)). This court will consider these two queries in turn.

### 1. Valid arbitration agreement

■ As to the first query, *see Woodmen of World Life Ins. Soc.,* 479 F.3d at 566 (first query on a motion to compel arbitration is "whether there is a valid arbitration agreement"), the court finds no valid arbitration agreement in any contract between ONESCO and Pals; indeed, there is no contract at all between ONSECO and Pals. Nevertheless, as a member of the NASD, ONESCO is bound to follow the rules and regulations of the NASD, including the NASD Code. *See Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.,* 264 F.3d 770, 771 (8th Cir.2001). The NASD Code requires NASD members to arbitrate disputes, pursuant to Rule 10101, if they "'aris[e] out of or in connection with the business of any member'" and are "'between or among members or associated persons and public customers,'" and Rule10301, upon which Pals specifically relies, "provides that the matter shall be submitted to arbitration upon the demand of the customer." *Id.* (quoting NASD Rule 10101 and citing Rule 10301). Thus, there is a valid arbitration agreement in this case, by virtue of NASD Rule 10301,

notwithstanding that there was no express arbitration agreement between Pals and ONESCO, and the first query on a motion to compel arbitration is answered in the affirmative. *See Woodmen of World Life Ins. Soc.,* 479 F.3d at 566.

### 2. Whether the dispute falls within the terms of the agreement

The second query on a motion to compel arbitration, "whether the particular dispute falls within the terms of that agreement,'" *id.,* is likewise answered in this case by reference to NASD Rule 10301(a). The Rule provides as follows:

> Any dispute, claim, or controversy eligible for submission under the Rule 10100 Series between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer.

NASD Rule 10301(a). Thus, the first condition for a dispute within the terms of the Rule is that the party demanding arbitration must be a "customer" of the member or an associated person, and the second condition is that the dispute in question must have arisen "in connection with the business of such member or in connection with the activities of such associated person[ ]." *Id.*

#### a. "Customer" condition

■ As to the first condition for an arbitrable dispute within the terms of Rule 10301(a), Pals contends that "customer" within the meaning of the Rule is anyone who is not a broker or a dealer, citing *Multi–Financial Sec. Corp. v. King,* 386 F.3d 1364, 1368 (11th Cir.2004), and that he was such a "customer" of ONESCO.

The Eighth Circuit Court of Appeals, however, expressly rejected this same definition as "too broad." *Innovex, Inc.*, 264 F.3d at 772. Instead, under the law of this Circuit, a "customer" within the meaning of Rule 10301 is one engaged in a business relationship that involved "some brokerage or investment relationship between the parties." *Id.* at 772–73 (expressly excluding from the definition of "customer" an entity that only received financial advice, without receiving investment or brokerage related services). Nevertheless, Pals was a "customer" *of Lancaster* even under this narrower definition under controlling case law, because as a matter of law he was engaged in an investment relationship with Lancaster when he invested in the Lancorp Fund. The question is whether that customer relationship with Lancaster is enough to invoke arbitration with ONESCO pursuant to Rule 10301(a).

Although this court rejected the Eleventh Circuit definition of "customer" in *King*, on the basis that controlling Eighth Circuit law applies a narrower definition, the court finds that the decision in *King* stands on more solid ground in its holding that "customer" in Rule 10301(a) refers to either a member's or an associated person's customer, and thus, affords customers of an associated person a right to compel arbitration against a member. *See King*, 386 F.3d at 1369. Indeed, this interpretation appears to be the plain meaning of the Rule, because the Rule provides for arbitration with a member of any dispute "between a customer and a member *and/or* associated person arising in connection with the business of such member or in connection with the activities of such associated persons." NASD Rule 10301(a) (emphasis added). As the court in *King* concluded, "When an investor deals with a member's agent or representative, the investor deals with the member." *King*, 386 F.3d at 1370. Thus, the question is whether Lancaster was an "as-

sociated person" of ONESCO at the time that Pals was engaged in an investment relationship with Lancaster, such that Pals was a "customer" of an "associated person" of ONESCO, and, hence, by dealing with the "associated person," Pals dealt with the member. *See id.*

 ONESCO contends that, by the time that Lancaster became an "associated person" of ONESCO on March 23, 2004, Pals had already invested in the Lancorp Fund, so that Pals was never the "customer" of an "associated person." Contrary to ONESCO's contentions, the record shows beyond dispute that the terms of the Lancorp Fund private placement offering were materially changed in April 2004, which required all subscribers to confirm their subscriptions or receive a return of their funds, that Lancaster held all funds invested in the Lancorp Fund private placement offering until May 2004, and that the Lancorp Fund private placement offering did not close until May 2004, all of which shows that there was still an investment relationship between Lancaster and Pals after Lancaster became an "associated person" of ONESCO, and as such, Pals was a "customer" of Lancaster after March 2004, and was thereby a customer of ONESCO. *King*, 386 F.3d at 1370 ("When an investor deals with a member's agent or representative, the investor deals with the member," and thus, is a "customer" of the member).

### b. "Arising in connection with the business relationship" condition

 Turning to the second condition for an arbitrable dispute within the terms of NASD Rule 10301(a), the "arising in connection with the business relationship" condition, *see* NASD Rule 10301(a), ONESCO contends that any conduct giving rise to Pals's dispute arose "in connection with" the business relationship between

Pals and Lancaster *before* Lancaster became an "associated person" of ONESCO, so that it was not "in connection with" any business relationship with ONESCO. Again, the record shows beyond dispute that the terms of the Lancorp Fund private placement offering were materially changed in April 2004, which required all subscribers to confirm their subscriptions or receive a return of their funds, that Lancaster held all funds invested in the Lancorp Fund private placement offering until May 2004, and that the Lancorp Fund private placement offering did not close until May 2004. All of this activity after Lancaster became an "associated person" of ONESCO, on which Pals in part relies for his claims in arbitration, plainly arose "in connection with the activities of such associated person." *See* NASD Rule 10301(a) (one alternative for the second requirement for arbitration on demand of a customer).

▇ Moreover, this court agrees with the Eleventh Circuit Court of Appeals in *King* that "[t]he NASD requires that its members supervise the activities of their associated persons, as part of their business," so that "negligent supervision [also] satisfies the Code's second arbitration condition." *King*, 386 F.3d at 1370; *see also* NASD Rule 10301(a) (one alternative for the "in connection with the business" condition is that the dispute arose "in connection with the business of such member"). Here, in light of activity with Pals's investment in Lancorp during April and May 2004, Pals has alleged negligent supervision of Lancaster, the "associated person," by ONESCO, the "member," during the time that Lancaster was an "associated person." *See id.* Thus, the second condition for an arbitrable dispute within the terms of Rule 10301(a) is met. *Id.* That being so, the second query on a motion to compel arbitration, "whether the particular dispute falls within the terms of that [arbitration] agreement," is also answered in

the affirmative. *See Woodmen of World Life Ins. Soc.*, 479 F.3d at 566 (in addressing a motion to compel arbitration the second query for the court is "whether the particular dispute falls within the terms of that agreement' ").

### 3. Summary

Because both pertinent queries on a motion to compel arbitration have been answered in the affirmative, the court finds the parties' dispute to be arbitrable. Therefore, the court will grant Pals's Motion To Compel Arbitration. *See Woodmen of World Life Ins. Soc.*, 479 F.3d at 566 (a motion to compel arbitration should be granted if there is a valid arbitration agreement and the particular dispute falls within the terms of that agreement).

### C. Impact Of Arbitrability Determination

Because the court finds that the parties' dispute is arbitrable, the court finds, further, that ONESCO cannot show likelihood of success on the merits of its contention that the parties' dispute is not arbitrable, as ONESCO must to satisfy the first factor in analysis of its motion for a preliminary injunction enjoining Pals's arbitration action. *See Dataphase*, 640 F.2d at 114 (the first factor in analysis of a preliminary injunction is likelihood of success on the merits). Moreover, even though a party might suffer irreparable harm if compelled to arbitrate a dispute that it has not agreed to arbitrate, *cf. Howsam*, 537 U.S. at 83, 123 S.Ct. 588 ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."), in the absence of any likelihood of success, the court finds that there is no threat of irreparable harm to ONESCO if it is compelled to arbitrate the parties' dispute, that the balance between the harm and the injury that the injunction's

issuance would inflict on other interested parties does not warrant a preliminary injunction, and the public interest also do not warrant issuance of a preliminary injunction. *See Lankford,* 451 F.3d at 503 ("No single factor is dispositive, as the district court must balance all factors to determine whether the injunction should issue.") (citing *Baker Elec. Co-op.*); *Baker Elec. Co-op.,* 28 F.3d at 1472 (" 'No single [*Dataphase* ] factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction.' ") (quoting *Calvin Klein Cosmetics Corp.,* 815 F.2d at 503). Consequently, the court will deny ONESCO's Motion For Preliminary Injunction to enjoin Pals's arbitration action.

Moreover, as indicated above, ONESCO's August 16, 2007, Motion To Consolidate Preliminary Injunction Hearing With Trial On The Merits (docket no. 10); ONESCO's August 24, 2007, Motion For Order Authorizing The Parties To Engage In Immediate Discovery On The Issue Of Arbitrability (docket no. 17); and Pals's August 24, 2007, Motion For Protective Order (docket no. 21) are also necessarily mooted by the court's disposition of ONESCO's Motion For Preliminary Injunction and Pals's Motion To Compel Arbitration.

### III. CONCLUSION

Upon the foregoing,

IT IS ORDERED THAT

1. ONESCO's August 16, 2007, Motion For Preliminary Injunction (docket no. 8) is **denied;** and

2. Pals's August 24, 2007, Motion To Compel Arbitration (docket no. 20) is **granted. This matter shall proceed to arbitration and all actions in this court are stayed in the interim.** The parties shall file, jointly or separately, status reports on the progress of arbitration **every ninety days from the date of this order** and **within 15 days** of the disposition of the arbitration action.

IT IS FURTHER ORDERED THAT

1. ONESCO's August 16, 2007, Motion To Consolidate Preliminary Injunction Hearing With Trial On The Merits (docket no. 10) is **denied as moot;**

2. ONESCO's August 24, 2007, Motion For Order Authorizing The Parties To Engage In Immediate Discovery On The Issue Of Arbitrability (docket no. 17) is **denied as moot;** and

3. Pals's August 24, 2007, Motion For Protective Order (docket no. 21) is **denied as moot.**

**IT IS SO ORDERED.**